IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTOPHER BRADLEY,

     Petitioner,

v.                                                CASE NO. 1:13-cv-244-MP-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on ECF No. 4, Petitioner's *pro se* First

Amended Petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. The Petition stems from Petitioner's Alachua County jury

conviction for false imprisonment, sexual battery by threat or force with a

deadly weapon, and violation of injunction for protection against repeat

violence ("IPARV"), for which he was sentenced to life imprisonment. In his

Petition, Petitioner asserts eighteen grounds of ineffective assistance of

trial counsel and double jeopardy. (ECF No. 4.) Respondent filed a

response and appendix with relevant portions of the state-court record,

arguing that the Petition should be denied because his claims either

involve a state-law issue or are without merit. (ECF No. 14.)

Instead of filing a reply, Petitioner filed an "Amendment to Petition for Writ of Habeas Corpus Request for Respondent to Respond," asserting thirty-four (34) grounds for relief. (ECF No. 20.) Grounds 1–15 incorporated grounds 1–15 asserted previously in his first amended petition. (*Id.*) Grounds 16–18 requested that the Court hold grounds 16–18 in abeyance. Grounds 19–34 were new claims that had not been asserted in his first amended petition. (*Id.*) The filing was construed as a motion for leave to file a second amended petition. (ECF No. 23.) The Court denied Petitioner's request to amend grounds 1–15 because Petitioner already had the opportunity to amend his petition once and the information in his proposed amendment was more properly considered a reply with respect to grounds 1–15.  With respect to grounds 16–18, the Court denied Petitioner's request to hold the claims in abeyance because a stay would cause unnecessary delay for no purpose since there was no state action pending. The Court, however, provided Petitioner an opportunity to file a reply to grounds 16–18.  Finally, the Court denied Petitioner's request to add grounds 19–34 because the claims would prejudice Respondent and were nonetheless untimely.

As of the date of this report and recommendation, Petitioner has not filed his reply to grounds 16–18 and the time for doing so has passed. The

first amended petition ("Petition") is, therefore, ripe for review. Upon due

consideration of the Petition, the response, the state-court record, and the

reply, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

Petitioner was originally charged via information in case number 01-

2006-CF-002756-A on July 7, 2006, with: (1) kidnapping in violation of Fla.

Stat. § 787.01(1)(a); (2) sexual battery by threat or force likely to cause

serious personal injury in violation of Fla. Stat. §§ 784.03(2), 794.011(4)(b);

and (3) violation of IPARV in violation of Fla. Stat. § 784.047. (ECF no. 16-

1 at 69–70.)[2] The State then filed an amended information on March 6,

2007, charging Petitioner with: (1) kidnapping in violation of Fla. Stat. §§

784.03(2), 787.01(1)(a); (2) sexual battery by threat or force likely to cause

serious personal injury in violation of Fla. Stat. §§ 784.03(2),

794.011(3)–(4); and (3) violation of IPARV in violation of Fla. Stat. §

784.047. (ECF No. 16-2 at 36–37.)

Following a jury trial, Petitioner was convicted of the lesser included

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] Because the page numbers throughout the exhibits (ECF Nos. 10-1, 10-2, 10-3, 10-4, 11-1, 11-2, and 11-3) are inconsistent, the page numbers for the exhibits to which the Court cites refer to the ECF page numbers at the top of the page.

offense of false imprisonment, and convicted of sexual battery with physical force with a deadly weapon, and violation of IPARV. (ECF No. 16-2 at 114–15, 118.) Under § 794.0115, Petitioner was designated a dangerous sexual felony offender under Fla. Stat. § 794.0115, thereby subjecting him to mandatory minimum term of twenty-five (25) years' imprisonment. (*Id.* at 131.) Petitioner was sentenced to life imprisonment. (*Id.* at 133–39.)[3]

Petitioner appealed to the First District Court of Appeal ("First DCA"). (ECF No. 14-6 at 66–95.) Petitioner presented two issues on appeal: (1) whether the trial judge erred in overruling the decision by the first trial judge regarding the admissibility of evidence derived from the video tape; and (2) whether the trial court abused its discretion in preventing the defense from introducing both the videotape and contents of the same videotape. (*Id.*) The First DCA, however, *per curiam* affirmed without written opinion. (ECF No. 14-7 at 36–37.)

On January 6, 2009, Petitioner filed a *pro se* Rule 3.850 motion for post conviction relief. (*Id.* at 39–46.) Before the trial court ruled on the Rule

---

[3] Petitioner was sentenced to five years' imprisonment for false imprisonment, to run consecutive to the sentence for sexual battery, life imprisonment with 491 days jail time credit to run consecutive to the sentence imposed in Case No. 01-2004-CF-5365-A, and time served for violation of IPARV. (ECF No. 16-2 at 133–37.)

3.850 motion, however, Petitioner filed a motion to voluntarily dismiss his Rule 3.850 motion. (*Id.* at 86, 88–89.) The trial court granted the motion to voluntarily dismiss on April 17, 2009. (*Id.* at 87.)

Next, on July 30, 2009, Petitioner filed a Petition for Writ of Habeas Corpus in the First DCA. (*Id.* at 93–120.) In the petition, Petitioner asserted fifteen grounds of ineffective assistance of appellate counsel. (*Id.*) On September 17, 2009, the First DCA per curiam denied the petition on the merits without written opinion. (*Id.* at 123.)[4]

Petitioner proceeded to file another Rule 3.850 motion for post conviction relief on November 11, 2009, alleging seventeen grounds of ineffective assistance of trial counsel and two grounds of double jeopardy. (*Id.* at 164–98; ECF No. 14-8 at 1–19.) After discussing the relevant standard for ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. (1984), the trial court summarily denied all nineteen claims on the merits. (ECF No. 14-10 at 155–61; ECF No. 14-11 at 1-6.) The First DCA *per curiam* affirmed without written opinion on July 30, 2013. (ECF No. 14-13 at 8–9.)

---

[4] After the First DCA denied the petition on the merits, Petitioner filed a petition for writ of habeas corpus in the Florida Supreme Court in April 2011. (ECF No. 14-1 at 19.) The Florida Supreme Court dismissed the petition on May 24, 2011, however, as unauthorized. (*Id.*)

Petitioner submitted his original petition in this Court to prison officials for mailing on November 27, 2013. (ECF No. 1.) Pursuant to the Court's order, he then filed his amended petition on December 20, 2013. (ECF No. 4.)

## Scope of Federal Habeas Review

The role of a federal habeas court when reviewing a state prisoner's application pursuant to § 2254 is limited. *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000). Under § 2254(a), federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Additionally, federal courts must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* § 2254(d)(1). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed. 2d 385 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983).

Moreover, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120-21, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only available in cases of federal constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir.1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir.1990). The limitation on federal habeas review applies with equal force when a petition, which truly involves only state law issues, is "couched" in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216

(11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a

defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 105. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## DISCUSSION

### Ground One: Ineffective assistance of counsel for failing to call an exculpatory defense witness

Petitioner contends that trial counsel was deficient for failing to call Michael Tillman as a defense witness at trial. Petitioner says that based on Mr. Tillman's deposition, Mr. Tillman would have testified that the victim asked Mr. Tillman to lie about the sexual assault and that the victim had expressed a desire to rejoin Petitioner after his release. Petitioner says that had Mr. Tillman been called, the jury would have questioned the victim's credibility. Thus, Petitioner says there is a reasonable probability that Petitioner would have been acquitted.

The state court denied this claim on the merits, noting that Mr. Tillman did not represent that the victim asked him to lie about the sexual battery as Petitioner says he did. (ECF No. 14-10 at 157–58.) The state court concluded that because Mr. Tillman would not have testified as Petitioner asserts, trial counsel was not deficient for failing to call Mr. Tillman at trial. (*Id.*)

Because the state court denied this claim on the merits, Petitioner must show that the state court's decision was contrary to or an unreasonable application of federal law. *See* §2254(d)(1). The state court

clearly applied *Strickland* to Petitioner's claim so Petitioner must show that the state court's decision was an unreasonable application of federal law. He cannot meet this heavy burden.

At his deposition, Mr. Tillman testified that previously he had a homosexual relationship with Petitioner. (ECF No. 14-11 at 55.) According to Mr. Tillman, the victim wanted him to lie to the judge and tell the judge that he saw Petitioner continuously coming over to the victim's house and that he saw Petitioner previously beat the victim. (*Id.* at 68–69, 73.) Mr. Tillman also testified that the victim said she was going to wait for Petitioner even if she had to wait for twenty-five years. (*Id.* at 85.) To Mr. Tillman it seemed like the victim wanted to get Petitioner in trouble. (*Id.*) Mr. Tillman also wanted to help Petitioner because he did not want Petitioner to go to prison. (*Id.* at 87–88.) Mr. Tillman specifically testified, however, that the victim did not ask him to lie about seeing Petitioner rape the victim. (*Id.* at 73.)

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Evans v. Sec'y, Fla. Dep't of Corrections*, 699 F.3d 1249, 1268 (11th Cir. 2012). The mere fact that other witnesses could have been called to present different testimony from that elicited from those who were

called, is not a sufficient ground to prove ineffective assistance of counsel.

*Body v. United States*, 568 F. App'x 760, 762 (11th Cir. 2014) (quoting

*Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995)). Although

Petitioner wanted trial counsel to call Mr. Tillman at trial, counsel cannot be

deficient for failing to call a witness that would not provide the testimony

that Petitioner says the witness would have given.

Moreover, even if counsel's performance was somehow deficient,

Petitioner cannot demonstrate that he was prejudiced by the failure to call

Mr. Tillman. "The failure to call an exculpatory witness is more likely to be

prejudicial when the conviction is based on little evidence of guilt." *Id.*

(citing *Fortenberry v. Haley*, 297 F.3d 1213, 1228–29 (11th Cir. 2002)). In

addition to the fact that Mr. Tillman would not have proffered the testimony

suggested, there was ample other evidence in this case upon which

Petitioner was convicted.  And to the extent Mr. Tillman's potential

testimony may have cast doubt upon the victim's credibility, this is

insufficient to show that the jury would have believed Mr. Tillman's

testimony over the other evidence. *See id.* (although the proffered

exculpatory witness's testimony may have cast some doubt upon the

evidence introduced at trial, because the record was replete with other

evidence supporting the conviction, the failure to call the witness is

insufficient to show that the jury would have believed his testimony over the other evidence). For example, aside from the victim's own testimony, the victim's daughter testified about how distraught the victim was upon returning home, Dr. Vega testified the victim had internal vaginal lacerations and bruises and lacerations on the victim's body, and the IPARV was admitted into evidence.

Accordingly, the state court's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.[5] This claim is, therefore, due to be denied.[6]

_____

[5] In his reply, ECF No. 20, for issues 1–15 Petitioner largely argues that the postconviction judge's findings were incorrect. Whether or not the state court's findings were correct is not the issue before this Court when reviewing a habeas petition. It is abundantly clear that the state court analyzed Petitioner's claims under *Strickland*. Thus, this Court's scope of review is a very narrow one: whether the state court's decision was an *unreasonable* application of *Strickland*. "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. . . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself. A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision. . . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 101–02 (internal citations and quotations omitted). Despite Petitioner's assertions that the judge's findings were incorrect, for the reasons explained in this report and recommendation, the judge's conclusions were not unreasonable applications of *Strickland*.

[6] Petitioner's reply, ECF No. 20, asserts that the state court erred by not conducting an evidentiary hearing on this claim. Petitioner did not raise this claim in his Petition. And as discussed, his proposed amendment is construed as a reply. Nonetheless, under Florida law, a defendant is not entitled to an evidentiary hearing on his initial postconviction motion if "(1) the motion, files and records in the case conclusively show that the defendant is not entitled to any relief, or (2) the motion or a particular claim is legally insufficient." *Cook v. State*, 792 So. 2d 1197, 1201 (Fla. 2001).

## Ground Two: Ineffective assistance of counsel for failing to introduce an exculpatory video at trial

In ground two, Petitioner claims trial counsel was ineffective for failing to introduce a videotape at trial, which showed Petitioner and the victim engaging in consensual abnormal sexual activities. Petitioner says counsel told Petitioner the only way to introduce evidence of Petitioner and the victim's consensual abnormal sexual activities was for Petitioner to testify at trial. Despite Petitioner following counsel's advice and testifying, counsel never introduced the videotape. Petitioner says that he would not have testified if he had known that the videotape was not going to be admitted into evidence.

The state court denied this claim on the merits, acknowledging that both prior to trial and during trial, defense counsel tried to introduce the videotape—which merely showed the victim having sex with Petitioner and another person without the use of any objects or sex toys. (ECF No. 14-10 at 158, n.1.) Nonetheless, the trial court allowed the videotape to be

---

"The defendant in a postconviction proceeding bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden." *Id.* (citing *Kennedy v. State*, 547 So.2d 912 (Fla. 1989). Claims that are conclusively refuted by the record do not require an evidentiary hearing. *Thompson v. State*, 796 So. 2d 511, 516 (Fla. 2001). Petitioner's claims are conclusively refuted by the record as explained in this report and recommendation and, therefore, do not require an evidentiary hearing.

introduced into the record for purposes of appeal. (*Id.*) The trial court, therefore, concluded that counsel did not render deficient performance. (*Id.*) In addition, the trial court concluded Petitioner could not show prejudice because the contents of the videotape were irrelevant to whether the victim consented to being beaten and vaginally penetrated with a baton by Petitioner. (*Id.*)

Petitioner has not demonstrated that the state court's determination was contrary to or an unreasonable application of clearly established federal law. Trial counsel attempted to introduce the videotape both during pre-trial proceedings and at trial before opening arguments. (ECF No. 14-3 at 22–36.)  At trial, however, the judge granted the State's motion in limine to prevent defense counsel from introducing the videotape for four reasons: (1) the videotape was too remote in time to the alleged sexual battery; (2) both parties agreed that the videotape demonstrated consensual sexual activity; (3) any probative value is outweighed by its prejudicial value; and (4) there was nothing to prevent defense from eliciting testimony from the victim about her and Petitioner previously engaging in consensual sex. (*Id.* at 33.) After the judge's ruling, trial counsel also specifically inquired as to whether he could elicit testimony regarding the victim and Petitioner using sex toys or bringing other sexual

partners into their relationship. (*Id.* at 35–36.) The judge ruled that counsel could inquire about sex toys but not other sexual partners because as long as the encounters with other partners was consensual and non-violent, it would be irrelevant to the circumstances at hand. (*Id.*) Then, during a break between witnesses during the state's case, defense counsel proffered the videotape for appeals purposes only, clearly stating that the videotape was "for appellate purposes only, not published to the jury." (*Id.* at 123–24.)

Petitioner has not shown that counsel's performance was deficient. Counsel indeed tried multiple times to admit the videotape into evidence. It was clear, however, prior to Petitioner testifying, that the judge would not allow its admission. Counsel cannot be deficient for failing to do something that he tried to do but was prohibited from doing pursuant to the judge's ruling. Thus, Petitioner also could not be prejudiced from the alleged failure. Moreover, Petitioner was present for the judge's ruling, which made clear that the videotape would not be admitted and that counsel could only elicit certain testimony regarding sexual activities. Petitioner could not be prejudiced by counsel's alleged failure to do something when it was abundantly clear to Petitioner before he testified that the trial judge was not going to admit the videotape into evidence.  Moreover, as the trial court

noted, the contents of the videotape—consensual sexual activity with Petitioner and another person—was irrelevant to whether Petitioner sexually battered the victim with a nightstick against her will.

Petitioner has, therefore, failed to demonstrate that the state court's determination was contrary to or an unreasonable application of *Strickland*. Accordingly, ground two is due to be denied.

### Ground Three: Ineffective assistance of counsel for misadvising Petitioner about testifying

Ground three asserts that trial counsel was ineffective for advising Petitioner that if Petitioner testified, evidence of the videotape would be admitted. Petitioner wanted evidence to be admitted that he and the victim frequently used sex toys. Petitioner says that if he had not testified, the jury would have been left with less than overwhelming evidence of guilt and he would have been acquitted.

The state court denied this claim on the merits because the videotape did not depict Petitioner and the victim using sex toys. (ECF No. 14-10 at 158–59.) Moreover, Petitioner testified on record that his decision to testify was made freely and voluntarily. (*Id.*)

Petitioner has not shown that the state court's decision was unreasonable. As discussed in ground two, counsel sought to introduce the

videotape and then clarified, with Petitioner present, about the questions he could ask since the videotape was not admissible. Even if Petitioner misunderstood the Court's ruling regarding the videotape and that misunderstanding somehow equated to deficient performance by counsel—which it does not—Petitioner has wholly failed to demonstrate the he suffered any prejudice.  Although Petitioner says he wanted the videotape entered to show that he and the victim used sex toys the videotape does not show him and the victim using sex toys. Instead, the State, defense counsel, and the First DCA all agreed that the videotape did not display the use of any sex toys.

Moreover, Petitioner testified about previously using sex toys with the victim. (ECF No. 14-4 at 90–91.) Thus, Petitioner was able to introduce evidence that he and the victim previously used sex toys. Finally, Petitioner testified that his decision to testify was made freely and voluntarily. (*Id.* at 70.) Petitioner cannot demonstrate that he was prejudiced by his choice to testify.

Petitioner has demonstrated neither deficient performance nor prejudice. Accordingly, he is not entitled to habeas relief on ground three.[7]

---

[7] In his reply, Petitioner asserts that the postconviction judge erred by not granting an evidentiary hearing on this claim. Petitioner did not raise this claim in his Petition, nor did the court err in not holding an evidentiary hearing. *See supra* note 5.

***Ground Four: Ineffective assistance of counsel for failing to present a defense based on the lack of DNA, physical injury, or fingerprints***

Ground four alleges that trial counsel was ineffective by failing to question Dr. Tamara Vega about the scars in the victim's vagina, the lack of external injury to the victim's vagina, and the lack of marks on the victim's wrists from allegedly being tied up. Petitioner asserts that counsel should have called nurse Carolyn Gring to testify that she did not observe any abrasions or bruises on the victim's arms or legs. Petitioner also says counsel should have questioned law enforcement about the lack of DNA and fingerprints on the nightstick. Petitioner alleges that had counsel presented these defenses, he would have been acquitted.

The state court denied this claim on the merits, noting that Petitioner admitted to using the nightstick on the victim when he testified at trial and that various witnesses testified about the victim's injuries. In addition, counsel did question Dr. Vega about the lack of external damage to the victim's vagina and the internal injuries to the victim's vagina. Further, although trial counsel did not call Ms. Gring, Dr. Vega presented the same testimony Petitioner contended Ms. Gring would have given.

Petitioner has not demonstrated that the state court's determination was an unreasonable application of *Strickland*. For starters, Dr. Vega

testified on direct examination, although there was no visible external sign of trauma to the victim's vagina, there was blood coming from the opening of the vagina and the victim had internal vaginal abrasions. (*Id.* at 160–61.) Dr. Vega also testified that she did not see any injuries to the victim's wrists, arms or legs. (*Id.* at 163–64.) Thus, Petitioner cannot demonstrate that trial counsel was deficient for failing to question Dr. Vega about the lack of external vaginal, wrist, leg, and arm injuries, because Dr. Vega already had provided that testimony on direct examination. Furthermore, on cross-examination, trial counsel specifically questioned Dr. Vega about the abrasions in the victim's vagina. (*Id.* at 165–66.)  Thus, trial counsel there was no deficiency with regard to counsel's questioning of Dr. Vega. In addition,  Officer Tanya Van Winkle also testified that she did not see any injuries to the victim's wrists, so there is no question that the jury was presented with evidence about the lack of external injuries to the victim. (*Id.* at 188.)

In addition, Kristan Schadd, a crime laboratory analyst for the Florida Department of Law Enforcement, testified that both the victim's and Petitioner's DNA was found on various parts of the nightstick. (ECF No. 14-4 at 11–13.) Trial counsel questioned Ms. Schadd about whether she tested part of the nightstick handle for blood, semen, or saliva. (*Id.* at

20–21.) Trial counsel also elicited testimony from Ms. Schadd that the victim was the major contributor of DNA on the nightstick handle. (*Id.* at 22.) Thus, to the extent Petitioner says trial counsel should have elicited testimony about the DNA on the nightstick, trial counsel indeed did so. Petitioner, therefore, cannot demonstrate that counsel rendered deficient performance.

Likewise, Petitioner cannot demonstrate any prejudice because counsel did not Ms. Gring to testify about the lack of injuries to the victim's arms and legs. It was unnecessary to call Ms. Gring because evidence about the lack of injuries to the victim's arms and legs was already in the record from Ms. Vega's testimony.

Finally, Petitioner's assertion that he was prejudiced by trial counsel's failure to elicit testimony about the lack of fingerprints on the nightstick is wholly meritless. Petitioner testified that he used the nightstick on the victim the night of the alleged assault at the victim's request. (*Id.* at 90.) It would have been prejudicial to Petitioner if there had been evidence in the record that there were no fingerprints on the nightstick because such evidence would have contradicted Petitioner's own story. Because the state court's determination was not unreasonable under *Strickland*, ground

four is due to be denied.[8]

### Ground Five: Ineffective assistance of counsel for failing to depose the victim a second time after learning that she had a second interview with the lead police detective

Petitioner claims that trial counsel should have deposed the victim a second time after the State disclosed shortly before trial that the lead detective had interviewed the victim a second time and that there was a DVD of the interview.

Petitioner presented this claim to the state court in his amended motion for postconviction relief but the state court denied the claim on the merits. The state court wrote:

> As to ground (E), Defendant alleges that trial counsel was ineffective for failing to redepose the victim after learning of the DVD of her second interview with Detective Hayes. Prior to the trial beginning, the State notified the court that, due to an inadvertent discovery violation, a Richardson hearing would be necessary. . . . . During the Richardson hearing, defense counsel indicated that the defense was not prejudiced by the violation and that a continuance would not be necessary. . . . . Defendant agreed with his counsel's determination not to ask for a continuance. . . . . Because counsel indicated that Defendant was not prejudiced by the violation, and Defendant agreed that no continuance should be requested, Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

---

[8] In his reply, Petitioner asserts that the postconviction judge erred by not granting an evidentiary hearing on this claim. Petitioner did not raise this claim in his Petition, nor did the court err in not holding an evidentiary hearing. *See supra* note 5.

(ECF No. 14-10 at 160) (internal citations omitted). Petitioner must show that the state court's decision was an unreasonable application of *Strickland*.

Petitioner has failed to demonstrate that the state court unreasonably applied *Strickland*. First, as the state court noted, counsel *and* Petitioner agreed that a continuance was not necessary. In discussing the DVD, counsel represented:

> That being said, having viewed the DVD at least two times, I believe if this case were six months younger that I would be in a position where I would have to demand a continuance to redepose the victim, because there are some things on there that were not in Detective Hayes's report of that second interview. Obviously Detective Hayes – I would characterize her report during that interview as mostly discussing the places where that interview didn't agree with the first. But that doesn't mean that she had fully reported it. So there are portions in there that I've seen for the first time. I think arguably – there's an argument that it would entitle Mr. Bradley to a continuance, but I don't think at this point he's inclined to ask for a continuance. We can ask him. The bottom line is, we have all the witnesses here, I believe. I don't know that we ever will again. And for that reason – and I'm going to say that I do not believe his defense is prejudiced, because if I maintain otherwise, I think it puts us in a worse position.

(ECF No. 14-3 at 13–14.) Petitioner then spoke with counsel, following which, Petitioner stated—on the record—that he was in agreement with counsel's position. (*Id.* at 14.)

Petitioner had the opportunity to request a continuance so counsel

could redepose the victim. Petitioner declined to do so. Instead, he agreed with counsel's strategic decision to move forward. In addition to the fact that an attorney's strategic decision normally cannot form the basis of a claim for ineffective assistance of counsel claim, Petitioner agreed to the decision not to redepose the victim, as reflected on the trial court record. Thus, counsel's decision not to redepose the victim does not constitute deficient performance. And because Petitioner agreed to the decision and agreed at trial that he was not prejudiced by the decision, Petitioner cannot show that the decision not to redepose the victim resulted in prejudice.

Accordingly, Petitioner has failed to demonstrate that the state court's decision was an unreasonable application of *Strickland* in light of the fact that Petitioner agreed not to seek a continuance and agreed that his defense was not prejudiced by the decision. This claim does not warrant habeas relief.

### Ground Six: Ineffective assistance of counsel for failing to object to the State recalling the victim

Petitioner claims that trial counsel was ineffective for failing to object to the State recalling the victim, prior to cross-examination of the victim, so the State could introduce some items of evidence through the victim. Petitioner says that because trial counsel told the court he had no objection

to the State doing so, counsel failed to preserve the issue for appeal. Petitioner says it was counsel's opinion that there was no prejudice and instead, counsel's actions bolstered the State's case.

The state court denied this claim on the merits, noting that the only testimony taken from the victim during her recall was that which was necessary to lay the foundation for the items coming into evidence. (ECF No. 14-10 at 161.) In addition, there was no basis to object to the items coming into evidence. (*Id.*) Thus, there was no error by counsel or prejudice. (*Id.*)

Petitioner has failed to demonstrate that the state court's determination was unreasonable. The victim was the State's second of nine witnesses at trial. (ECF No. 14-3 at 5–6.) After the State concluded its direct examination of the witness, and prior to defense beginning its cross-examination of the victim, the State recalled the victim to introduce various photographs into evidence. (*Id.* at 126.) The photographs consisted of pictures of the bathroom at the victim's house where she left her clothing when she undressed after going home, the clothing the victim changed into at home after the assault to wear to the hospital, and the victim at the hospital. (*Id.* at 128–31.) Prior to the State's recall, trial counsel stated that "given that there's no question in my mind that Mr. Colaw could introduce

them through someone else, I don't think it's prejudicial to have him do

that." (*Id.* at 126.)[9]  Obviously, counsel did not object because he believed

objecting would be frivolous.  Plaintiff cannot demonstrate that counsel

rendered deficient performance by failing to raise a frivolous argument.

*See Chandler*, 218 F.3d at 1315 (to demonstrate deficient performance a

petitioner must show that no competent counsel would have taken the

action that his counsel did).

Indeed, immediately after counsel stated his position, the judge

commended both counsel "for being very professional, also being very

cooperative and not picking fights where it's not necessary." (*Id.*)

Moreover, the State surely could have admitted the photographs through

either the investigating detective or the hospital doctor later in its case.

Consequently, Petitioner cannot demonstrate that no competent counsel

would have agreed to permit the State to recall the victim to admit the

photographs into evidence.

In addition, on recall, the State did not ask any questions or elicit any

testimony other than testimony necessary to establish the foundation to

admit the photographs into evidence. Because the State could have

admitted the photographs through other witnesses and because the State

---

[9] Mr. Colaw was the State prosecutor.

did not elicit any other testimony on recall, Petitioner has not demonstrated

that he was prejudiced by trial counsel's failure to object to the recall.

Petitioner has not shown that the state court's decision was an

unreasonable application of *Strickland*. This claim is, therefore, due to be

denied.[10]

### Ground Seven: Ineffective assistance of counsel for failing to argue against the State's illegal objection

In ground seven Petitioner alleges that counsel was ineffective for

failing to argue against the State's objection on cross-examination. He also

says counsel was ineffective because although the court acknowledged

the objection, the court did not rule on the objection, which counsel should

have challenged. Petitioner claims that counsel essentially limited himself

in terms of questions during cross-examination and instead, should have

phrased questions within the scope of direct to obtain responses beneficial

to Petitioner.

Petitioner presented this claim in state court and the state court

denied it on the merits because not only did the trial court rule on the

State's objection, the court did not limit defense counsel's cross

---

[10] In his reply, Petitioner asserts that the postconviction judge erred by not granting an evidentiary hearing on this claim. Petitioner did not raise this claim in his Petition, nor did the court err in not holding an evidentiary hearing. *See supra* note 5.

examination. Instead, the court merely ruled on the State's objections. The

decision is therefore entitled to double deference and the question

becomes whether "there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

Petitioner has not demonstrated that counsel's performance was

either deficient nor prejudicial. On cross examination, counsel sought to

impeach the victim regarding her testimony in court about why she went to

Petitioner's house that night compared to her testimony during deposition,

during which the following exchange took place:

> Q. You remember being placed under oath?
> A. Uh-huh.
> Q. Promised to tell the truth?
> A. Uh-huh.
> Q. And that day – excuse me while I make sure I have
> the quote correct. I asked you –
> Mr. Colaw: Your Honor, I'm going to object. Foundation.
> One, I think the witness is required to have an opportunity to
> view that statement. And I would like to know, just if you could
> – if Counsel could direct me to what page and lines in the
> deposition so I follow along.
> Mr. Small: Continuing at this point, before actually
> confronting the witness with the statement, to remind her of it
> and see if she recalls it.
> The Court: I'm trying to find if I have the – also.
> Mr. Small: I have the original, Your Honor.
> The Court: I have a number of them in here and I'm trying
> to page through them to find out which one.
> Mr. Small: May I approach the clerk, Your Honor?
> The Court: You may.
> Mr. Small: I'd like to have this identified for – marked for

identification. For the record what's being identified as –
  The Clerk: Defense B.
  Mr. Small: Thank you. I'll now have the original marked as
Defense B, Your Honor.
By Mr. Small:
  Q. So just so we're clear on what I'm speaking of, you
testified today that you decided to stop by and see him one
more time.
  Mr. Colaw: Objection. Asked and answered.
  The Court: Overruled. Go ahead.
By Mr. Small:
  Q. Do you recall me asking you at deposition why you
were there that day?
  A. Yes.
  Q. Do you recall your answer?
  Mr. Colaw: Objection. Improper foundation.
  The Court: Overruled. Strike that. Sustained. Sorry.
  Mr. Small: Mr. Colaw, I'm referring to deposition, page 21,
lines 15 through 22.
By Mr. Small:
  Q. Is that the same answer you gave me at deposition.
  Mr. Colaw: your Honor, objection. Improper foundation. If
counsel could show Ms. Foreman the statement and allow her
to have an opportunity to review.
  The Court: I'm going to sustain your objection.

(*Id.* at 135–37.) Thus, it is clear that counsel did not challenge the

objection because he merely rephrased the question. It is also clear that

the court did indeed rule on the State's objection—improper

foundation—by sustaining the objection. Although the ruling was slightly

delayed, a ruling was nonetheless made on the same objection to the

same question. Counsel cannot be deficient for failing to seek a ruling on

an objection that the Court already had addressed.

Following this exchange, counsel showed the victim the deposition

transcript and asked "[d]id I ask you the same question, why you went by

that night?" (*Id.* at 137.) The victim answered "yes," and counsel asked

"[a]nd was your answer at that time the same as it was here today?" (*Id.*)

The State objected "on the grounds that the question asked at deposition

is not exactly the same question that's been asked today." (*Id.*) The court

sustained the objection and counsel rephrased the question. (*Id.* at

138–43.) Although the State made several objections while counsel tried to

impeach the victim, the court merely ruled on the objections. A court's

ruling on objections under the Florida Rules of Evidence does not equate

to limiting the cross-examination. Simply put, there was no reason for

counsel to challenge the court's rulings.

Finally, to the extent Petitioner claims counsel somehow got himself

stuck in a "box" by asking questions related to the deposition at the

beginning, counsel sought to impeach the victim with her inconsistent

testimony from the inception. This is nothing more than a trial strategy and

one that was reasonable. *See Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir.

1993) ("a court should be highly deferential to those choices . . . that are

arguably dictated by a reasonable trial strategy"). Petitioner cannot

demonstrate deficient performance by counsel's reasonable trial strategy.

And while counsel's impeachment of the victim's testimony with her deposition testimony was not conducted in textbook fashion, Petitioner's counsel, nonetheless, made the point that the victim's testimony about why she went to see Petitioner that day differed to some degree from her deposition testimony.  Because there was no deficient performance Petitioner cannot demonstrate any prejudice as a result of counsel's cross-examination of the victim. Accordingly, ground seven does not warrant relief.

### Ground Eight: Ineffective assistance of counsel for failing to impeach the victim

In ground eight Petitioner says counsel failed to properly impeach the victim on the six inconsistencies in the victim's testimony at trial compared to her testimony during deposition. Petitioner says that had counsel impeached the victim on these inconsistencies, the jury would have believed the victim was not credible.

The state court denied this claim on the merits because the purported statements were either not materially inconsistent or counsel did impeach the victim. (ECF No. 14-10 at 161; ECF No. 14-11 at 1.) Petitioner musttherefore show that the state court's decision was unreasonable in light of *Strickland*. Petitioner has failed to do so.

Petitioner says the first inconsistency is that during trial the victim said Petitioner forced her left arm behind her back but at deposition the victim testified that it was her right arm. The victim did not testify as Petitioner claims she did. Instead, at trial the victim testified that Petitioner grabbed her in a bearhug and twisted her *left back*. (ECF No. 14-3 at 93.) During her deposition, the victim testified that Petitioner grabbed her and put her right arm behind her back and used his other arm to bearhug her around her body. (ECF No. 14-5 at 168–69.) These statements are not inconsistent.

Second, Petitioner says at trial the victim said Petitioner's bedroom did not have a door but at deposition she said it did have a door. At trial the victim testified that Petitioner dragged her into his house, threw her on the floor, told her to get up, forced her into his room, and then he closed the door. (ECF No. 14-5 at 169–70.)

Third, at trial the victim testified that she ran behind Petitioner's bed and then later she testified that she was beaten on the bed. (ECF No. 14-3 at 96–97, 102.) During her deposition, the victim was not as specific, however, and testified that she could not get out of the room, that Petitioner pushed her on the bed, and beat her. (ECF No. 14-5 at 170.) Although her statement at deposition does not include testimony about

running behind the bed, whether she ran behind the bed was not a material

fact that would have been necessay to mention in her statement. *See State*

*v. Hoggins*, 718 So. 2d 761, 770–71 (Fla. 1998) (inconsistent statements

include a witness's failure to state a fact in circumstances in which the fact

naturally would have been asserted—but omissions must be of a material,

significant fact, rather than mere details).

　　　Fourth, at trial the victim testified that Petitioner "reached down by his

floor and he picked up a stick. And when I seen the stick, I began to cry

even more . . . ." (ECF No. 14-3 at 106.) During her deposition, the victim

stated that all of a sudden she saw a night stick on the floor and asked

Petitioner what he was going to do with it. (ECF No. 14-5 at 170.) The

exact point in which the victim first saw the nightstick is merely a detail,

however, which does not constitute a materially inconsistent statement.

　　　Fifth, at trial the victim said that when she got home she pulled her

car into the garage and sat in her car for a good little minute and cried.

(ECF No. 14-3 at 115.) After discussing approximately what time she got

home, she said that at some point she went inside. (*Id.*) During her

deposition, the victim testified that when she got home it was around 5:45

a.m. and she sat on the porch because she did not want to go into her

house and have her daughter see her like that. (ECF No. 14-5 at 175.)

Although at trial the victim did not include testimony about sitting on her porch her trial and deposition statements are not materially inconsistent. The trial testimony simply focused on the victim's immediate actions upon pulling into the garage.

Sixth, at trial the victim testified she went to Petitioner's house to see him but at deposition she said she went to Petitioner's house to see Ms. Bond. Whether this is or is not an inconsistency, trial counsel, nonetheless impeached the victim on this issue at trial. (ECF No. 14-3 at 140–41.)

An inconsistent statement must address a material matter. *Rivera v. McNeil*, No. 07-22633-CIV, 2009 WL 4277235, at *11 (S.D. Fla. Nov. 30, 2009) (citing *Myers v. State*, 31 So. 275, 278 (Fla. 1901)). "A strategic decision by counsel, such as how or whether to cross examine a witness, constitutes ineffective assistance 'only if it was so patently unreasonable that no competent attorney would have chosen it.'" *Id.* (citing *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987)). None of the purported inconsistencies that Petitioner points to are direct or material inconsistencies. Accordingly, it was not unreasonable for counsel not to impeach the victim with regard to immaterial details on cross-examination.

Further, Petitioner cannot show that any failure to impeach the victim with immaterial details between her trial testimony and deposition

testimony resulted in prejudice. This is particularly so because Petitioner's counsel did impeach the victim on cross examination regarding other inconsistencies, the purpose of which was to impact the jury's perception of the victim's credibility. The fact that counsel might not have highlighted every inconsistent minor detail in the victim's testimony does not rise to the level of constitutional error. *See Roberts v. Singletary*, 794 F. Supp. 1106, 1122 (S.D. Fla. 1992) ("No constitutional error results from counsel's failure to exploit every potential inconsistency."). Accordingly, Petitioner has not demonstrated deficient performance and cannot demonstrate prejudice Petitioner is not entitled to habeas relief on ground eight.

### Ground Nine: Ineffective assistance of counsel for failing to object to Detective Hayes' speculative testimony

Petitioner claims that counsel allowed Detective Hayes to offer speculative testimony. Specifically, he says that Detective Hayes testified that she watched Petitioner's house from the time it was secured until it was searched and that she never saw Petitioner return home. Petitioner contends that because Detective Hayes left at some point to have a judge sign the search warrant, that she could not know for sure that Petitioner never returned home.

The trial court denied this claim on the merits, noting that it was "an

utterly ridiculous claim." (ECF No. 14-11 at 1.) There was nothing

unreasonable about the trial court's determination. Detective Hayes never

affirmatively testified that she left her post to obtain the search warrant, nor

did she testify at her deposition that she procured the search warrant after

Petitioner's house was secured. (ECF No. 14-10 at 120.)

Even if she left briefly, her testimony based on her personal

knowledge was that Petitioner did not return home. There is nothing

speculative about that and any assertion of such by counsel would have

been frivolous. *See Chandler*, 218 F.3d at 1315 (a petitioner must show

that no competent counsel would have taken the action that his counsel

did). Because there is no factual basis for this claim, counsel was not

deficient and Petitioner was not prejudiced. This claim is wholly without

merit and is due to be denied.

### Ground Ten: Ineffective assistance of counsel for failing to object to the State's population statistics expert

In ground ten Petitioner claims counsel was ineffective for failing to

object when the State implied that its population statistics witness, Kristan

Schaad, was an expert in population genetics. Petitioner says counsel

stipulated in the presence of the jury that Ms. Schaad was an expert in

genetics population statistics even though counsel knew Ms. Schaad was

merely qualified to perform in population statistics computations.

The state court denied this claim on the merits, concluding that Petitioner failed to state any basis on which Ms. Schaad could have been prevented from testifying as an expert and that Petitioner's defense was consent in which he admitted to using the nightstick on the victim. (ECF No. 14-11 at 1–2.)

Petitioner has failed to demonstrate either deficient performance or prejudice under *Strickland*. "Ineffective assistance of counsel can be established when counsel fails to investigate the qualifications of a[n expert] witness." *State v. Fitzpatrick*, 118 So. 3d 737, 762 (Fla. 2013). But, even if it is later determined that an expert witness, who testified at trial was not qualified, such does not necessarily mean that counsel's performance in not challenging the witness's qualifications is deficient so long as counsel conducted some minimal investigation into the qualifications of the witness. *Id.* at 762–63.

Here, it was unnecessary for counsel to inquire as to Ms. Schaad's qualifications to testify as an expert witness in population statistics because the State already had elicited testimony from Ms. Schaad to establish her credentials . Ms. Schaad testified that she has specialized training in forensic DNA testing, has completed approximately 1,500

forensic DNA tests, participates in human DNA testing and matching on a regular basis, has passed multiple proficiency tests, and has testified in court as an expert in forensic DNA testing approximately ten times. (ECF No. 14-3 at 224–26.) Following this testimony, counsel stipulated to Ms. Schaad testifying as an expert in forensic DNA testing. (*Id.* at 226.) Then, Ms. Schaad further explained that she has also been qualified and allowed to testify concerning the population statistics of her forensic DNA testing results. (*Id.* at 227; ECF No. 14-4 at 15.) She stated that she also has had specific training on the population statistics calculations. (ECF No. 14-4 at 15.) Ms. Schaad also testified that population statistics calculations are part of the proficiency tests that she has passed. (*Id.*) Following this testimony, counsel stipulated to Ms. Schaad testifying as an expert in population statistics as it relates to forensic DNA testing. (*Id.*) Counsel's decision not to ask additional unnecessary questions regarding Ms. Schaad's qualifications was not deficient performance.

Moreover, Ms. Schaad's testimony about that the Petitioner's and the victim's DNA profiles found on the nightstick are rare was wholly irrelevant to Petitioner's defense. Petitioner's defense was consent—that the victim asked him to use the nightstick on her. Thus, according to the defense, Petitioner's DNA and the victim's DNA had to be on the nightstick. Surely,

counsel could not have been deficient for not challenging Ms. Schaad's

qualifications when Ms. Schaad's testimony was irrelevant to the defense.

*See Hannon v. State*, 941 So. 2d 1109, 1122–23 (Fla. 2006) (counsel was

not deficient for failing to challenge expert witness's credentials because

expert witness's testimony was irrelevant to the defense case).

Likewise, because Ms. Schaad's testimony was irrelevant to

Petitioner's defense, Petitioner cannot demonstrate any prejudice from Ms.

Schaad's testimony as an expert witness. Petitioner, therfore, has failed to

demonstrate that he is entitled to relief on ground ten.

### Ground Eleven: Ineffective assistance of counsel for failing to present an adequate motion for judgment of acquittal

Petitioner claims that Mr. Bryant was ineffective by presenting a

standard motion for judgment of acquittal ("JOA") without a factual

argument. Petitioner says counsel merely argued that the State had not

made a prima facie case of sexual battery and kidnapping. He also says

that for all three counts, counsel should have pointed out specific evidence

that supported the defense. In addition, Petitioner claims counsel should

have "articulated with individual particularity the legal points based on the

evidence" to support the motion for JOA.

Petitioner presented this claim to the state court in his amended

motion for postconviction relief. The state court denied the claim on the

merits and said:

> As to ground (K), Defendant alleges that trial counsel was
> ineffective for failing to file an adequate motion for judgment of
> acquittal. Defendant is essentially challenging the sufficiency of
> the evidence supporting his convictions. A defendant cannot
> challenge the sufficiency of the evidence underlying his
> conviction through a rule 3.850 motion. . . . . Motions filed
> under rule 3.850 cannot be utilized in place of a direct appeal. .
> . . . Accordingly, the claim raised is without merit.

(ECF No. 14-11 at 2.)

Respondent argues that Petitioner's claim was barred on collateral

review in state court and, therefore, is also barred from federal review.[11]

While the Court agrees that Petitioner has not exhausted a claim that

should have been but was not raised on direct appeal, without showing

cause and prejudice, nonetheless, the state court acknowledged that this

claim was one for ineffective assistance of counsel claim, and ultimately

denied the claim on the merits. Nothing in § 2254(d) requires that a state

court provide an explanation as to why it rejected a claim on the merits. A

summary rejection qualifies as an adjudication on the merits. *Wright v.*

*Sec'y for Dep't of Corrections*, 278 F.3d 1245, 1254. (11th Cir. 2002).

Although the state court explained why the claim should have been raised

---

[11] In the alternative, Respondent also argues that this claim is without merit.

on direct appeal, and then proceed to deny the claim on the merits without explanation, the summary denial qualifies as an adjudication on the merits and warrants deference. *See Boland v. Sec'y, Dep't of Corrections*, 278 F. App'x 876, 879 (11th Cir. 2008) ("Although the state court denied Boland's claim of ineffective assistance of appellate counsel without explanation or citation to authority, the summary denial qualifies as an adjudication on the merits and is entitled to deference under section 2254(d)(1)."). This Court must accept the state court's decision as an adjudication on the merits and determine whether the decision was contrary to or an unreasonable application of clearly established federal law.

It was not unreasonable for the state court to determine that Petitioner could not establish deficient performance under *Strickland*. Pursuant to Florida Rule of Criminal Procedure 3.380(a), a JOA is appropropriate when the trial court determines that the evidence presented in the case-in-chief is insufficient to warrant a conviction. The Florida Supreme Court has explained that,

> [i]n moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence …. [C]ourts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the

law.

*Fitzpatrick v. State*, 900 So. 2d 495, 507 (Fla. 2005) (internal citations and

quotations omitted).

In this case, trial counsel made a motion for JOA at the close of the

State's case:

> Mr. Small: Secondly, Your Honor, I'd make a motion for JOA as
> to all charges. As to the two charged felonies, I would simply
> make a standard motion that the State hasn't made its prima
> facia case. As to the third count of the information, domestic
> violence – violation of domestic violence protective order, we
> would suggest to the Court that even in the light most favorable
> to the State, the evidence is [the victim] came to Mr. Bradley's
> house. There's no evidence that she was invited. She simply
> showed up there. And on that basis we'd ask the Court to
> dismiss that charge at this time.

ECF No. 14-4 at 25.) The trial court, however, denied the motion for JOA

as to all counts:

> The Court: I'm going to deny the motions as to one and two. As
> to three, any voluntary coming to the house, I think, would have
> ended at the time she tried to leave the house and he allegedly
> kidnapped her. And that's no longer consensual encounter, and
> I think that would be in violation of the injunction. Based on
> that, I deny the motions. I think it's a question of fact, not law,
> at this point in time.

(*Id.* at 25–26.) This is not a situation where counsel wholly failed to move

for JOA on any of the three Counts. Counsel presented the motion to the

judge, permitting the judge to consider whether the evidence submitted in

the State's case-in-chief was insufficient to sustain a conviction.

Nonetheless, a bare bones motion for judgment of acquittal, without any specific argument, is not preserved for appeal. *Stephens v. State*, 787 So. 2d 747, 753 (Fla. 2001); *see also* Fla. R. Crim. P. 3.380 (requiring a motion for JOA to "fully set forth the grounds on which it is based"). Accordingly, counsel's motion for JOA on Counts 1 and 2 preserved nothing for appellate review. Petitioner, however, does not argue that counsel was ineffective for this reason. Instead, Petitioner argues that counsel was ineffective in failing to present a sufficient representation of the evidence and if he had, there is a reasonable probability that Petitioner would have been acquitted. (ECF No. 4 at 27–28.) The Court, therefore, declines to consider whether counsel was ineffective for failing to preserve the motion for JOA for appeal.

Even assuming, however, that counsel was deficient for not presenting a specific legal argument for the motion for JOA and for failing to argue specific facts in evidence, Petitioner has not demonstrated that he was prejudiced by such. "In order to meet the *Strickland* standard, [a petitioner] must show that, had his counsel supported his motion for JOA with caselaw . . . there was a reasonable probability that the trial judge would have granted his motion for JOA." *Grissett v. Sec'y, Dep't of*

*Corrections, Fla. Att'y Gen.*, 223 F. App'x 846, 849 (11th Cir. 2007). "A trial court should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law." *Pearce v. State*, 880 So. 2d 561, 571 (Fla. 2004).

In this case, the State presented overwhelming evidence of Petitioner's guilt on all three counts. To prove kidnapping, the State had to prove three elements: (1) Petitioner forcibly, or by threat, confined or imprisoned the victim against her will; (2) Petitioner had no lawful authority to do so; and (3) Petitioner acted with intent to either (a) commit or facilitate the commission of sexual battery, or (b) inflict bodily harm upon or to terrorize the victim or another person. (ECF No. 14-4 at 166.) The State's evidence included the victim's testimony that Petitioner forcibly confined the victim against the victim's will and without lawful authority. In addition, the victim's testimony that she was beaten with the nightstick and vaginally penetrated with the nightstick also supported the conclusion that Petitioner intended to inflict bodily harm upon the victim and/or intended to commit sexual battery. Thus, there was more than sufficient evidence upon which the jury could conclude that Petitioner kidnapped the victim as charged in Count 1.

Similarly, to prove sexual battery with physical force, the State had to prove four elements: (1) the victim was twelve years of age or older; (2) Petitioner committed an act upon the victim in which the vagina of the victim was penetrated by an object; (3) Petitioner, in the process, used or threatened to use a deadly weapon, or used actual physical force likely to cause personal injury; and (4) the act was done without the victim's consent. (*Id.* at 168.) The State's evidence included that Petitioner was over twelve years of age, that Petitioner penetrated the victim's vagina with a nightstick, that he used physical force that caused the victim vaginal bleeding and internal lacerations, and that the victim did not consent to Petitioner doing so. Indeed, despite Petitioner's emphasis on certain facts counsel could have argued in support of the motion for JOA, he overlooks the substantial evidence adduced against him during the State's case-in-chief.

Finally, to prove violation of IPARV, the State had to prove three elements beyond a reasonable doubt: (1) the court had issued an IPARV against Petitioner in favor of the victim; (2) Petitioner was aware of the IPARV; and (3) Petitioner:

> willfully violated the injunction for protection against repeat
> violence by committing an act of repeat violence on [the victim]
> or by committing an act of sexual violence on [the victim], or by

committing any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to [the victim]; or telephoning, contacting, or otherwise communicating with [the victim] directly or in[dir]ectly.

(*Id.* at 170–71.) The victim testified that she had obtained the IPARV against Petitioner, that Petitioner was present in open court when the IPARV was entered, and that Petitioner was given a copy of the IPARV. The IPARV was also admitted into evidence during the State's case-in-chief. (ECF No. 14-3 at 86–87.) In addition, the victim testified extensively about the beating, the sexual assault, and Petitioner's threat to do it again. Moreover, there was ample testimony about how Petitioner and the victim continued seeing and speaking to each other despite the entry of the injunction.  And, as the state court explained, even if the victim took it upon herself to go to Petitioner's house without being invited, viewing the evidence in the light most favorable to the State, any "consent" ended when Petitioner prevented her from leaving his house.

Not only has Petitioner failed to point to any caselaw that would have supported his motion for JOA, he has also failed to prove that there is a reasonable probability that the trial judge would have granted his motion for JOA even if counsel had supported his motion with caselaw and additional evidence. Thus, even if counsel did render deficient performance—which

he did not—Petitioner has failed to demonstrate a reasonable probability

that he would have been acquitted if counsel had presented caselaw and

pointed to additional evidence supporting the motion for JOA.

Finally, although Petitioner does not contend that he was prejudiced

by counsel's failure to preserve the motion for JOA on Counts 1 and 2 for

appellate purposes, the Court nonetheless concludes that Petitioner also

was not prejudiced by the fact that the JOA on Counts 1 and 2 was not

preserved for appeal.

> Generally, an appellate court will not reverse a conviction that
> is supported by competent, substantial evidence. If, after
> viewing the evidence in the light most favorable to the State, a
> rational trier of fact could find the existence of the elements of
> the crime beyond a reasonable doubt, sufficient evidence exists
> to sustain a conviction.

*Fitzpatrick*, 900 So. 2d at 507. Viewing the evidence in the light most

favorable to the State, a rational trier of fact could find the existence of the

elements of kidnapping and sexual battery with physical force beyond a

reasonable doubt. Thus, on appellate review, even if counsel had asserted

a more articulate argument, thereby preserving the issue for appeal, there

is not a reasonable probability that his conviction would have been

reversed. *See Stephens*, 787 So. 2d at 754 (concluding that although the

issue was not properly preserved for appeal, even if it had been, there

would be no error in the trial court's denial because there was

overwhelming evidence of defendant's guilt).

Accordingly, ground eleven does not warrant habeas relief.

### Ground Twelve: Ineffective assistance of counsel for failing to follow through on a motion for mistrial

In ground eleven Petitioner claims that although counsel moved for a

mistrial after Yvette Vega's testimony implied that Petitioner was in jail

since the date of the offense, the trial court did not rule on the motion for

mistrial and counsel did not obtain a ruling on the motion. Petitioner says

that this testimony, combined with the fact that a juror witnessed counsel

carrying a suit into the courthouse that morning, suggested to the jury that

Petitioner was guilty. Petitioner says this rendered his trial fundamentally

unfair and because counsel did not follow through on the motion, the

motion was not preserved for appeal.

The state court denied this claim on the merits:

> As to ground (L), Defendant alleges that trial counsel was
> ineffective for failing to follow through on the defense's motion
> for mistrial. During its cross-examination of defense witness
> Yvette Vega, the State noted that Defendant was in jail at the
> time that he contact her. . . . . Defense counsel objected and
> moved for a mistrial. The court denied the motion for mistrial
> and overruled the objection. . . . . Defendant contends that
> counsel erred by failing to get a ruling from the court on his
> motion for mistrial. However, the record clearly reflects that the
> court was denying the motion, even if the court did not explicitly

> state that it was. . . . . Because Defendant fails to show either
> error by counsel or prejudice, the claim raised is without merit.

(ECF No. 14-11 at 2–3) (internal citations omitted). Petitioner must

demonstrate that the state court's determination was contrary to or an

unreasonable application of *Strickland*. Petitioner has failed to do so.

As the state court concluded, the trial court did rule on counsel's

motion for mistrial. After the State asked Ms. Vega on cross-examination if

Petitioner contacted her from the jail, to which Ms. Vega responded "yes,

he did," trial counsel objected, stated that it was prejudicial because it

implied that Petitioner was either in custody since his arrest or that he was

in jail for something else, and moved for a mistrial. (ECF No. 14-4 at

63–64.) The trial judge overruled the objection. (*Id.* at 65.) Trial counsel

then stated "[y]our Honor, before we bring them out, I want to note my

continuing objection. I believe he cannot, at this point, have a fair[] trial,

and I'd just simply like to note that for the record." (*Id.* at 66.) The trial

judge responded, "I understand, Counsel. And the objection is overruled."

(*Id.*)

It is clear from this dialogue that the trial court's overruling counsel's

objection encompassed the motion for mistrial. Moreover, after the trial

judge initially overruled the objection, counsel's "continuing objection" was

clearly directed toward the alleged unfair trial supporting his motion for mistrial. The judge nonetheless overruled that objection, clearly denying the motion for mistrial. Notably, as Respondent points out, the trial judge's ruling was so clear that even the postconviction judge—who was a different judge than the trial judge—understood that the trial judge denied the motion for mistrial. Furthermore, it is apparent from the record that counsel understood that the judge was denying the motion for mistrial.

Trial counsel also renewed all objections and his motion for mistrial at the close of evidence. (*Id.* at 105–06.) At that time counsel again specifically referenced the State's question about Petitioner being in jail. Counsel also re-asserted that a juror saw counsel carrying a suit into the courthouse that morning.[12] Counsel also argued that the cumulative effect of the issues to which he objected prevented Petitioner from having a fair trial, thereby requiring a mistrial. The trial judge again, overruled the objection, noting that he did not "think that the cumulative effect of those is going to in any way influence this jury one way or the other." (*Id.* at 106.)

---

[12] Before the defense presented its case, counsel informed the trial court that a juror had seen counsel carrying Petitioner's suit into the courthouse that morning. (ECF No. 14-4 at 27–30.) Counsel argued that the juror should be stricken because seeing such would remind the juror that Petitioner was incarcerated, thereby prejudicing Petitioner. The trial judge denied counsel's motion to strike the juror and overruled counsel's ongoing objection. (*Id.* at 30.)

Thus, not only did counsel obtain a ruling on the motion for mistrial immediately after the testimony about Petitioner being in jail, he obtained a second ruling at the close of evidence. Counsel cannot be deficient in failing to obtain a ruling on a motion for mistrial when he did in fact obtain a ruling on two separate occasions.  Because there was no deficient performance there can be no prejudice.

Finally, to the extent Petitioner claims he was prejudiced because the motion for mistrial was not preserved for appeal, nothing in the record supports the conclusion that his motion for mistrial was not preserved for appeal. Although the motion for mistrial was not the subject of either of the two issues Petitioner presented on direct appeal, that does not mean that counsel's performance was the cause. Petitioner has wholly failed to demonstrate that the state court's decision was contrary to or an unreasonable application of *Strickland*. Accordingly, this claim is due to be denied.[13]

---

[13] Respondent also asserts an argument regarding counsel's "cumulative error." Petitioner, however, has not presented a "cumulative error" claim, nor has he suggested that counsel's alleged deficient performance equates to cumulative error. Instead, Petitioner merely says that counsel failed to seek a ruling on the motion for mistrial, which "is cumulative to juror Michael Garcia who witnessed counsel carrying defendant's trial suit across the courtyard." (ECF No. 4 at 29.)

Nonetheless, to the extent Petitioner's claim is construed as one also asserting that the cumulative effect of defense counsel's errors deprived him of his right to effective assistance of counsel, the Supreme Court has not expressly recognized the cumulative error doctrine in regards to ineffective assistance of counsel claims.

### Ground Thirteen: Ineffective assistance of counsel for failing to object to the State's questions on cross-examination that had been asked and answered on direct examination

In ground thirteen Petitioner argues that during the State's cross-examination of Ms. Vega, counsel should have objected when the State re-questioned Ms. Vega about her criminal history involving crimes of dishonesty that already had been asked on direct examination. Petitioner says that although counsel objected after the witness left the stand, the trial court denied the objection as timely, which allowed the State to bolster its case and prevented the jury from recalling the meaning of a sustained objection. This claim has no merit.

The state court denied this claim on the merits, explaining that "it is

_____

However, as the Eleventh Circuit noted, "the Supreme Court has held, in the context of an ineffective assistance of counsel claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Forrest v. Fla. Dep't of Corrections*, 342 F. App'x 560, 564–65 (11th Cir. 2009) (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)). Similarly, although the Eleventh Circuit has noted that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial, the Eleventh Circuit has also never expressly recognized a freestanding cumulative effect claim. *See Ballard*, 785 F. Supp. 2d at 1336 (citing *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004); *Sims v. Singletary*, 155 F.3d 1297 (11th Cir. 1998); *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997); *Dobbs v. Kemp*, 790 F.2d 1499, 1505 (11th Cir. 1986); *Brostein v. Wainwright*, 646 F.2d 1048, 1056 (5th Cir. 1981)). A cumulative-error analysis should evaluate only the effect of matters determined to be error, not those determined to be non-errors. *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984); *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990).

Here, Petitioner has failed to demonstrate deficient performance or actual prejudice in this claim or any of the other ineffective assistance of counsel claims he raises in his Petition. Without individual merit, any claim of cumulative error also fails.

clear from the record that the court would have overruled the objection even if it had been timely made." (ECF No. 14-11 at 3.) The trial court further explained, "even if counsel did err by failing to timely object, Defendant fails to show prejudice because the witness's criminal history was already known by the jury; and, the State did not improperly emphasize it." (*Id.*)

Petitioner has not demonstrated that the State court's decision was unreasonable. For starters, when and whether to object is a matter of trial strategy, which rarely supports a claim of ineffective assistance of counsel. Nonetheless, even if counsel's performance was deficient—which it was not—Petitioner cannot demonstrate that he was prejudiced by the failure to object. When counsel objected after the witness's testimony, the trial court ruled, "[i]t's not timely, number one. And number two, I overrule the objection." (ECF No. 14-4 at 70.) It is clear that even had counsel made a timely objection, the trial court would have nonetheless overruled the objection. Thus, there is no basis for Petitioner's speculative argument that the objection would have been sustained had it been timely. Although he says he wanted to remind the jury what it meant to have an objection sustained, there would have been no sustained objection on this issue.

Moreover, evidence of Ms. Vega's criminal history already was in

evidence. Specifically, on direct examination Ms. Vega testified that she has been convicted of a felony two times and has been convicted of a misdemeanor involving dishonesty or false statements four times. (*Id.* at 59.)  Petitioner cannot demonstrate that he was prejudiced by the failure to timely object. Because Petitioner has failed to show that the state court's decision was unreasonable he is not entitled to relief on ground thirteen.

### Ground Fourteen: Ineffective assistance of counsel by failing to object to defective jury instructions

In Petitioner's fourteenth claim he contends that counsel rendered ineffective assistance of counsel because he did not object to the court's confusing and misleading reasonable doubt jury instructions. Petitioner says the court's instruction directed the jury to find Petitioner guilty if there was reasonable doubt.

The state court denied this claim on the merits, concluding that there was nothing objectionable about the jury instruction. (ECF No. 14-11 at 3.) Accordingly, Petitioner must show that the state court's determination was unreasonable under *Strickland*. Petitioner has not done so.

The trial judge instructed the jury, "if you decide that the main accusation has not been proved beyond a reasonable doubt, you will next need to decide if the defendant is guilty of any lesser-included crime." (*Id.*

at 167, 169.) In addition, the trial judge went through each charge and

lesser included offense, explaining for each offense that to prove the crime,

" the State must prove the following . . . elements beyond a reasonable

doubt . . . ." (*Id.* at 167–70.) The trial judge also instructed, "[t]he

presumption [of innocence] stays with the defendant as to each material

allegation in the information through each stage of the trial unless it has

been overcome by the evidence to the exclusion of and beyond a

reasonable doubt." (*Id.* at 171.) In explaining reasonable doubt, the judge

explained:

> Whenever the words reasonable doubt are used, you must
> consider the following: A reasonable doubt is not a mere
> possible doubt, a speculative, imaginary, or forced doubt. Such
> a doubt must not influence your returning a verdict of not guilty
> if you have an abiding conviction of guilt. On the other than, if,
> after carefully considering, comparing, and weighing all the
> evidence there is not an abiding conviction of guilt, or if having
> a conviction, it is one which is not stable or one which waivers
> and vacillates, then the charge is not proved beyond a
> reasonable doubt and you must find the defendant not guilty,
> because the doubt is reasonable. It is the evidence introduced
> in this trial, and to it alone, that you are to look for that proof. A
> reasonable doubt as to the guilt of the defendant may arise
> form the evidence, the conflict in the evidence, or the lack of it.
> If you have a reasonable doubt, you should find the defendant
> not guilty. If you have a reasonable doubt – if you have no
> reasonable doubt, you should find the defendant guilty.

(*Id.* at 171–72.)

Based on these instructions, there was no reason for counsel to

object. Nothing about these instructions is confusing or misleading. As the trial judge instructed, if the jury had a reasonable doubt as to the Petitioner's guilt, they should have found him not guilty. But, if there was no reasonable doubt about Petitioner's guilt, then the jury should have found him guilty. The mere fact that the trial judge began repeating the previous sentence and then corrected himself in the middle of the sentence does not somehow render the instructions confusing, especially in light of the number of times the judge explained the standard leading up to that point in the instructions. Because there was no basis to object, counsel was not deficient for declining to make a frivolous and baseless objection. It follows that Petitioner also could not have suffered prejudice from the failure to object. This claim is without merit and is due to be denied.

### Ground Fifteen: Double jeopardy based on convictions and sentences for sexual battery with a deadly weapon and violation of injunction for protection against repeat violence

Ground fifteen asserts that Petitioner was subjected to double jeopardy under *United States v. Dixon*, 509 U.S. 688 (1993), because Count 3 (violation of protective injunction) subsumed the offense of Count 2 (sexual battery). Petitioner also says he was denied effective assistance of counsel on this basis, but does not expound on this argument.

Respondent argues that Petitioner's double jeopardy claim is a state

law issue not cognizable on federal habeas review. Respondent further asserts that to the extent his claim is construed as an ineffective assistance of counsel claim, the claim is also without merit.

The state court denied Petitioner's standalone double jeopardy claim on the merits because neither of these offenses is a lesser included offense of the other. (ECF No. 14-11 at 4.) This Court must accept the Florida courts' interpretation of the state's own statutes. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). Petitioner, therefore, must demonstrate that the state court's adjudication was contrary to or an unreasonable application of clearly established federal law.

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1985); U.S. Const. amend. V. "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Garrett v. United States*, 471 U.S. 773, 778 (1985). Cumulative punishments for the same incident are permitted when the legislature clearly intends cumulative punishments. *Williams v. Singletary*, 78 F.3d 1510, 1512 (11th Cir. 1996); *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009).

Absent a clear legislative intent for cumulative punishments, the "same-elements" test should be applied to determine whether separate statutory provisions authorize cumulative punishments for the same criminal incident. *Williams*, 78 F.3d at 1512 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)). Under the "same elements" test, "if each statutory offense requires proof of an element not contained in the other, the offenses are not the 'same' and double jeopardy is no bar to cumulative punishments." *Id.* at 1513.

For example, in *Dixon*, the Supreme Court concluded that petitioner's conviction for assault with intent to kill was not barred by his earlier conviction for criminal contempt for violating a civil protection order ("CPO"). 509 U.S. at 700–02. There, contempt required the attorney to prove two elements: (1) knowledge of a CPO; and (2) a willful violation of one of its conditions—which included assault. *Id.* at 693, 700–02. Assault with intent to kill, however, required, among other things, proof of specific intent to kill. *Id.* at 701. Applying the "same elements" test, because the contempt offense required proof of knowledge of the CPO, which assault with intent to kill did not, the crimes were different offenses and, therefore, not barred by the Double Jeopardy Clause. *Id.* at 701–02.

Petitioner has not demonstrated that the state court's determination

was contrary to or an unreasonable application of clearly established

federal law. In Count 2, Petitioner was convicted of sexual battery with a

deadly weapon in violation of §§ 784.03(2), 794.011(4)(b). In Count 3,

Petitioner was convicted of violation of a IPARV in violation of § 784.047.

Nothing in either § 784.03, § 784.047, or § 794.011 provides an answer as

to whether the Florida Legislature intended to punish sexual battery with a

deadly weapon and violation of IPARV as separate offenses. Accordingly,

the Court will look to Florida's rules of statutory construction.

At the time Petitioner committed the offenses, Florida's rules of

statutory construction provided:

> (1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
> . . . .
>
> (4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
>
> (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as

set forth in subsection (1) to determine legislative intent.
Exceptions to this rule of construction are:

     1. Offenses which require identical elements of proof.

     2. Offenses which are degrees of the same offense as
provided by statute.

     3. Offenses which are lesser offenses the statutory
elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2006). Thus, the Florida legislature expressly

intended to convict and sentence a defendant for each offense he commits

during a single criminal episode, with three exceptions to that rule. *Barger*

*v. Crews*, No. 3:12cv185/RV/EMT, 2013 WL 646252, at *7 (N.D. Fla. Jan.

11, 2013.) These three exceptions adopt the *Blockburger* "same elements"

test. *Id.* (citing *State v. Weller*, 590 So. 2d 923, 925 (1991)).

     Petitioner has failed to prove that sexual battery with a deadly

weapon and violation of IPARV require identical elements of proof. To

prove sexual battery with a deadly weapon, the State had to prove four

elements: (1) the victim was twelve years of age or older; (2) Petitioner

committed an act upon the victim in which the vagina of the victim was

penetrated by an object; (3) Petitioner, in the process, used or threatened

to use a deadly weapon, or used actual physical force likely to cause

personal injury; and (4) the act was done without the victim's consent.

(ECF No. 14-4 at 168.) Tto prove that Petitioner violated the IPARV, the

State had to prove three elements beyond a reasonable doubt: (1) the

court had issued an IPARV against Petitioner in favor of the victim; (2)

Petitioner was aware of the IPARV; and (3) Petitioner:

> willfully violated the injunction for protection against repeat
> violence by committing an act of repeat violence on [the victim]
> or by committing an act of sexual violence on [the victim], or by
> committing any other violation of the injunction through an
> intentional unlawful threat, word, or act to do violence to [the
> victim]; or telephoning, contacting, or otherwise communicating
> with [the victim] directly or in[dir]ectly.

(*Id.* at 170–71.)

The offense of sexual battery with a deadly weapon required the

State to prove that Petitioner, in the process of the sexual battery, used or

threatened to use a deadly weapon, which was not an element of the crime

of violation of IPARV. Further, the crime of violation of IPARV required

proof that the court had issued an IPARV against Petitioner in favor of the

victim and that Petitioner was aware of the IPARV, neither of which are

elements of sexual battery with a deadly weapon. Accordingly, these

offenses do not require identical elements of proof.

Furthermore, neither of the crimes is a degree of each other. Finally,

violation of IPARV is not a lesser included offense of sexual battery with

physical force, and sexual battery with a deadly weapon is not a lesser

included offense of violation of IPARV. The state court expressly

concluded that neither offense is a lesser included offense of the other and

this Court must defer to that conclusion.  Although the state court did not specifically discuss all three exceptions, its ultimate decision—that dual convictions for these offenses does not violate the prohibition against double jeopardy—is not contrary to or an unreasonable application of clearly established federal law.

As Justice Rhenquist explained in *Dixon*, "a lesser included offense is defined as one that is 'necessarily included' within the statutory elements of another offense." 509 U.S. at 718 (Rhenquist, J., concurring in part and dissenting in part) (citing Fed. R. Crim. P. 31(c); *Schmuck v. United States*, 489 U.S. 705, 716–17 (1989)). This if reflected in Fed. R. Crim P. 31(c), which provides that "[a] defendant may be found guilty of any of the following: (1) an offense *necessarily* included in the offense charged; (2) an attempt to commit the offense charged; or (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right." (Emphasis added). In *Schmuck*, the Supreme Court adopted the elements approach to Rule 31(c), explaining that under the elements test, "one offense is not 'necessarily' included in another unless the elements of the lesser offense *are* a subset of the elements of the charged offense." 489 U.S. at 716 (emphasis added).

As illustration, Florida, recognizes two categories of lesser included

offenses: (1) "Category 1," or *necessary* lesser included offenses; and (2)

"Category 2," or *permissive* lesser included offenses. *Pollard v.*

*McDonough*, No. 3:06cv345/LAC/EMT, 2007 WL 2020160, at *6 (N.D. Fla.

July 9, 2007) (citing *In the Matter of the Use by the Trial Court of the*

*Standard Jury Instructions in Criminal Cases*, 431 So. 2d 594, 596 (Fla.

1981), *modified*, 431 So. 2d 599 (Fla. 1981)). "Because a . . . 'permissive'

lesser included offense has statutory elements that are facially distinct from

the greater offense, it can be subsumed into the greater offense only when

the charging document and the evidence to support the additional facts

needed to sustain the charge." *Id.* (citing *Weller*, 590 So. 2d at 925, n.2). In

other words, "[w]hen the commission of one offense *always* results in the

commission of another, then the latter is an inherent component of the

former." *Weller*, 590 So. 2d at 926. "[T]he *Blockburger* test by its very

nature is designed to distinguish between that group of crimes that are

'necessarily lesser included' offenses and that group of crimes that are

not." *Id.* Thus, permissive lesser included offenses "do not form the basis

of a federal double jeopardy violation because the commission of the

greater offense does not necessarily entail a conviction of the lesser

offense." *Pollard*, 2007 WL 2020160, at *6 (citations omitted).

　　　The problem with Petitioner's argument is that sexual battery with

physical force is not *necessarily* included in violation of IPARV because the elements of sexual battery with physical force are not *necessary* elements in violation of IPARV. While § 784.046 defines "violence" as, among other things, sexual battery, sexual battery is merely one of the many ways Petitioner could have violated the IPARV. Looking strictly at the statutory elements of violation of IPARV, without regard to the accusatory pleading or the proof adduced at trial, committing a violation of IPARV does not *necessarily* entail a conviction of sexual battery with physical foce. *See United States v. Estrada-Fernandez*, 150 F.3d 491, 494 (5th Cir. 1998) (whether an offense constitutes a lesser included offense with respect to the charged offense depends upon the statutory elements of the offenses in question, not the conduct proved at trial). Because Petitioner could have violated the IPARV without sexually battering the victim with physical force, sexual battery with physical force is not a lesser included offense under federal law.[14]

---

[14] Indeed, as Respondent argues, there are various ways in which the jury could have concluded that the State proved the third element for violation of IPARV—how Petitioner willfully violated the injunction. Specifically, the State had to prove either that Petitioner: (1) committed an act of repeat violence on the victim; (2) committed an act of sexual violence on the victim; (3) committed any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to the victim; or (4) telephoned, contacted, or otherwise communicated with the victim directly or indirectly. The amended information charged Petitioner in the disjunctive and the jury's verdict did not specify how they determined that the State proved the third element beyond a reasonable doubt. (ECF No. 14-2 at 37, 115.) Additionally, although irrelevant to the

Petitioner's argument that the aggravated form of sexual battery was subsumed into the violation when the state customized the jury instruction for violation of IPARV is unavailing and misplaced. Although the jury instruction included "an act of sexual violence against [the victim]," such did not render the elements of the charged offense—sexual battery with physical force—subsumed into violation of IPARV. At the time of the offense, "violence" meant "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death, by a person against any other person." Fla. Stat. § 784.046 (2006). In addition, "sexual violence" included sexual battery, as defined in chapter 794, and "[a]ny other forcible felony wherein a sexual act is committed or attempted." § 784.046(c). "Sexual battery" meant "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any object." Fla. Stat. § 794.011(1)(h) (2006). Thus, although the evidence adduced at trial could have permitted the jury to determine Petitioner committed an act of

---

analysis, Petitioner's assertion that he was convicted of violation of IPARV based on the sexual assault with a deadly weapon is nothing more than speculative and cannot support habeas relief. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal court cannot grant habeas relief on the basis of little more than speculation).

sexual violence against the victim, as discussed, neither sexual battery with a deadly weapon or violation of IPARV is a necessary lesser included offense of the other. Accordingly, Petitioner has failed to demonstrate that the state court's adjudication of his claim was contrary to or an unreasonable application of clearly established federal law.

Finally, to the extent that Petitioner claims he was denied effective assistance of counsel on this basis, his claim is without merit.[15] Petitioner cannot demonstrate counsel rendered deficient performance because raising a double jeopardy argument would have been frivolous since there was no double jeopardy. And without deficient performance there can be no prejudice. Petitioner is, therefore, not entitled to relief on ground fifteen.

### Ground Sixteen: Double jeopardy based on convictions for false imprisonment and violation of injunction for protection against repeat violence

---

[15] Although Respondent does not argue that the claim is unexhausted and procedurally defaulted, a review of Petitioner's amended motion for postconviction relief reveals that Petitioner did not assert that counsel was ineffective for failing to argue that the convictions for sexual battery with a deadly weapon and violation of IPARV violate the Double Jeopardy Clause. (ECF No. 14-7 at 164–98; ECF No. 14-8 at 1–19.) Nor did his direct appeal or his petition for state habeas corpus relief. Thus, in addition to being meritless, this claim also appears to be unexhausted. Furthermore, because Petitioner cannot now assert this claim in state court the claim is also procedurally defaulted. Finally, his procedural default cannot be excused because he has demonstrated neither cause nor prejudice, nor has he demonstrated a fundamental miscarriage of justice.

Ground sixteen asserts that Petitioner was subjected to double jeopardy because he was convicted for false imprisonment, which he claims is subsumed into his conviction for violation of IPARV. This double jeopardy claim also is without merit.

As an initial matter, Petitioner raises this issue as a standalone constitutional claim; he does not raise or mention ineffective assistance of counsel for failure to raise the double jeopardy claim in state court. The Court, therefore, will only address the standalone double jeopardy claim.

The state court denied this claim on the merits, finding that because neither false imprisonment nor violation of IPARV is a lesser included offense of the other, the dual convictions do not violate the prohibition against double jeopardy. (ECF No. 14-11 at 4–5.)  Accordingly, this Court must defer to the state court's determination that neither false imprisonment nor violation of IPARV is a lesser included offense of the other and determine whether upon that decision is contrary to or an unreasonable application of clearly established federal law.

As previously discussed, the Court must first determine whether the Florida Legislature expressly intended to convict and sentence a defendant separately for false imprisonment in violation of Fla. Stat. § 787.02(1)(a)

(2006), and violation of IPARV, in violation of § 784.047. Nothing in either §

784.047 or § 787.02, however, provides an answer as to whether the

Florida Legislature intended to punish these offenses as separate offenses

where the victim is over the age of thirteen. Accordingly, the Court will look

to Florida's rules of statutory construction. And as discussed, because it is

clear that the Florida legislature expressly intended to convict and

sentence a defendant for each offense he commits during a single criminal

episode, with three exceptions to that rule, the Court must consider

whether either of the three exceptions apply in this case.

Petitioner has failed to prove that false imprisonment and violation of

IPARV require identical elements of proof. To prove the crime of false

imprisonment, the state had to prove two elements beyond a reasonable

doubt: (1) Petitioner forcibly or by threat confined or imprisoned the victim

against her will; and (2) Petitioner had no lawful authority to do so. (ECF

No. 14-4 at 167.) Alternatively, to prove that Petitioner violated the IPARV,

the State had to prove three elements beyond a reasonable doubt: (1) the

court had issued an IPARV against Petitioner in favor of the victim; (2)

Petitioner was aware of the IPARV; and (3) Petitioner:

> willfully violated the injunction for protection against repeat
> violence by committing an act of repeat violence on [the victim]
> or by committing an act of sexual violence on [the victim], or by

committing any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to [the victim]; or telephoning, contacting, or otherwise communicating with [the victim] directly or in[dir]ectly.

(*Id.* at 170–71.)

The offense of false imprisonment required the State to prove that Petitioner forcibly or by threat confined or imprisoned the victim against her will and that Petitioner had no lawful authority to do so, neither of which were elements of the crime of violation of IPARV. Further, the crime of violation of IPARV required proof that the court had issued an IPARV against Petitioner in favor of the victim and that Petitioner was aware of the IPARV, which were not elements of false imprisonment. Accordingly, these offenses do not require identical elements of proof.

Furthermore, neither of the crimes is a degree of each other. Finally, violation of IPARV is not a lesser included offense of false imprisonment,[16] and false imprisonment is not a lesser included offense of violation of IPARV. The state court expressly concluded that neither offense is a lesser included offense of the other and this Court must defer to that conclusion, assuming it to be correct. Even though the state court did not specifically discuss all three exceptions, its ultimate decision—that dual convictions for

---

[16] The lesser included offense of false imprisonment is battery. (ECF No. 14-4 at 176.)

these offenses does not violate the prohibition against double jeopardy—is not contrary to or an unreasonable application of clearly established federal law.

Petitioner argues that false imprisonment is subsumed by the violation of IPARV—and therefore a lesser included offense of violation of IPARV—because false imprisonment is one of the ways that the IPARV could be willfully violated under the third element. Although false imprisonment *may* violate the IPARV, Petitioner's argument misconstrues what a lesser included offense is under federal law. False imprisonment is not necessarily included in violation of IPARV because the elements of false imprisonment are not *necessary* elements in violation of IPARV. While § 784.046  defines "violence" as, among other things, false imprisonment, false imprisonment is merely one of the many ways Petitioner could have violated the IPARV. Looking strictly at the statutory elements of violation of IPARV, without regard to the accusatory pleading or the proof adduced at trial, committing a violation of IPARV does not *necessarily* entail a conviction of false imprisonment. Because Petitioner could have violated the IPARV without falsely imprisoning the victim, false imprisonment is not a lesser included offense under federal law.

The question is not whether false imprisonment also happens to

violate the IPARV. Instead, the question is whether (1) forcibly or by threat

confining or imprisoning the victim against her will, and (2) without lawful

authority to do so, are necessary elements for violation of IPARV. The

answer is no and therefore the convictions due not violate double jeopardy

under federal law.  Accordingly, the state court's determination was neither

contrary to nor an unreasonable application of clearly established federal

law. This claim, therefore, does not warrant habeas relief.

### Ground Seventeen: Ineffective assistance of counsel for failing to sever the charge of violation of injunction for protection against repeat violence from the kidnapping and sexual battery charges

In ground seventeen, Petitioner asserts counsel was ineffective for

failing to sever the violation of IPARV charge from the kidnapping and

sexual battery charges. He says that there was no reason to try these

charges together and that allowing the jury to hear about repeat violence in

the context of the injunction prejudiced him regarding the kidnapping and

sexual battery charges. He also says that his defense to the kidnapping

and sexual battery charges was consent, which was not a defense to

violation of IPARV. Thus, Petitioner claims counsel rendered deficient

performance by failing to sever the charges, from which Petitioner was

prejudiced.

The state court denied this claim on the merits, concluding that

counsel did not err by failing to request a severance because severance of the charges would not have been granted. (ECF No. 14-11 at 4.) The state court explained that "all three offenses occurred at the same time, in the same place, and in the same action." (*Id.*) Moreover, the State was entitled to rebut Petitioner's affirmative defense of consent with evidence of his violation of the injunction. (*Id.*)

The state court's decision was not an unreasonable application of *Strickland*. First, Petitioner has not demonstrated that counsel rendered deficient performance. Pursuant to Fla. R. Crim. P. 3.152, when "two or more offenses are improperly charged in a single indictment or information, the defendant shall have a right to a severance of the charges upon timely motion thereof." "An offense is improperly charged in a single . . . information when it fails to meet the requirement for joinder of offenses set forth in Florida Rule of Criminal Procedure 3.150 . . . ." *Crossley v. State*, 596 So. 2d 447, 449 (Fla. 1992). Under Fla. R. Crim. P. 3.150,

> [t]wo or more offenses which are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses, whether felonies or misdemeanors, or both, are based on the same act or transaction or on two or more connected acts or transactions.

*Crossley*, 596 So. 2d at 449. Granting or denying a requested severance, however, is within the trial court's discretion. *State v. Vazquez*, 419 So. 2d

1088, 1090 (Fla. 1982.) Nonetheless, "[a] severance should be granted liberally when prejudice is likely to flow from refusing the severance." *Id.* (citing *Menendez v. State*, 368 So. 2d 1278 (1979)).

Nothing suggests that the charges against Petitioner were improperly joined. The offenses were based on the same occurrence on June 11, 2006, against the same victim, without any span of time in between the offenses. Thus, the charges were not improperly joined under Florida law.

Moreover, evidence of the kidnapping/false imprisonment and sexual battery charges was admissible to help prove a violation of IPARV. *See Kelley v. Estes*, No. 2:13cv522-WHA, 2015 WL 8796454, at *4–5 (M.D. Ala. Oct. 13, 2015) (counsel did not render deficient performance by failing to file a motion to sever where evidence of defendant's crimes in one case was admissible to help prove the crimes in the other case). Similarly, evidence of the IPARV was admissible to rebut Defendant's consent defense to the kidnapping/false imprisonment and sexual battery charges. Indeed, evidence demonstrating that the victim had obtained an IPARV against Petitioner is directly relevant to whether the victim would have consented to the episode alleged. Counsel did not render deficient performance by failing to request severance of the charges where the charges were not improperly joined and where evidence of each charge

was relevant to the others.

Second, even assuming counsel should have requested a severance, Petitioner has not demonstrated that he suffered any prejudice. As discussed because evidence of each charge was admissible to help prove the others, the jury would have heard the evidence regardless of a severance. *See Petty v. Sec'y, Dep't of Corrections*, No. 1:09-cv-171-MMP-GRJ, 2012 WL 4093381, at *11 (N.D. Fla. Aug. 14, 2012) (petitioner suffered no prejudice by failure to sever tampering charge from aggravated stalking charge because the evidence supporting the charges were the same and the jury would have heard the evidence even if the charge had been severed). In addition, there was significant evidence aside from the IPARV to convict Defendant of false imprisonment and sexual battery with a deadly weapon, such as the victim's testimony and Dr. Vega's testimony. *See Gonzales v. State*, 9 So. 3d 725, 727 (Fla. Dist. Ct. App. 2009) (severing possession of cocaine charge was not required to promote a fair determination of defendant's guilt or innocence because possession of cocaine was circumstantial evidence that defendant was under the influence of cocaine for the DUI charge, evidence of defendant's impaired condition was more than sufficient to convict defendant of DUI, and DUI and possession charge arose out of and constituted a single criminal

episode). Petitioner, therefore, cannot show that there is a reasonable probability that separate trials would have provided him a better chance of acquittal. *See Petty*, 2012 WL 4093381, at *11 (because evidence would have been the same in both trials had severance been granted, petitioner did not show there was a reasonable probability that separate trials would have provided petitioner a better chance of acquittal).

Petitioner has not demonstrated that the state court's determination was unreasonable. Accordingly, this claim does not permit habeas relief.

### Ground Eighteen: Ineffective assistance of counsel for failing to object to the jury being provided with the amended information

Petitioner claims that counsel was ineffective for failing to object to providing the jury with the amended information that revealed Petitioner's prior offense history. He says the jury had the amended information during jury selection and in the jury room during deliberations. Thus, he says that he was prejudiced by the jury's knowledge of his prior offenses.

The state court denied this claim on the merits because nothing in the record supports this allegation. (ECF No. 14-11 at 4.)  More specifically, the charging information given to the jury at the beginning of the trial and at the end of the trial did not include this information. (*Id.*) Therefore, there was no reason for counsel to object, so there was neither

deficient performance nor prejudice. (*Id.*)

The record evidences that the state court's determination was not an

unreasonable application of *Strickland*. Counsel did not render deficient

performance for failing to object because there was no reason to object. As

the state court noted, the record does not support Petitioner's factual

allegations. At the beginning of the trial, after the jury was sworn in, the

judge read the amended information to the jury:

> The Court: . . . The first count alleges that Christopher Shawn Bradley, in Alachua County, Florida, on or about June 11th, 2006, without lawful authority, did then and there forcibly, secretly, or by threat confine, abduct, or imprison another person, to wit, [the victim], against said person's will, with the intent to commit or facilitate the commission of a felony, to wit, sexual battery, and/or inflict bodily harm upon – to terrorize the victim or any person, contrary to Section 787.01(1)(a) of the Florida Statutes. Okay.
>
> The second count alleges – the first count was kidnapping. The second count alleges that Christopher Shawn Bradley, in Alachua County, Florida, on or about June 11th, of 2006, did then and there unlawfully commit a sexual battery upon [the victim], a person twelve years of age or older, without the consent of [the victim], by penetrating her vagina with an object, and in the process thereof used actual physical force likely to cause serious personal injury and/or used or threatened to use a deadly weapon, to wit, a nightstick, and in the process thereupon threatened to use force or violence likely to cause serious personal injury to [the victim], and [the victim] reasonably believed that Christopher Shawn Bradley had the present ability to execute said threat or threats, contrary to 794.011(3) and 794.011(4) of the Florida Statutes. That's sexual battery by threat of force or violence likely to cause serious personal injury.

> The third count alleges that Christopher Shawn Bradley, in Alachua County, on or about June 11th, 2006, did willfully violate the provisions of an injunction for protection against repeat violence, pursuant to Section 784.046, by committing an act of repeat violence, sexual violence, an intentional unlawful threat, word, or act to do violence to [the victim], or by contacting or otherwise communicating with [the victim], directly or indirectly, contrary to Section 784.047 of Florida Statutes. Ladies and gentlemen, that's known as violation of protection – violation of protective injunction against repeat violence.

(ECF No. 14-3 at 44–46.) Then, after closing arguments, the trial judge read the jury instructions to the jury, none of which included Petitioner's prior offense history. (ECF No. 14-4 at 166–79.) In explaining the verdict form, the judge stated, "I have it here. I'm going to read it to you. You will be given this to take back to the jury room with you." (*Id.* at 175.) The judge then read the verdict form. (*Id.* at 175–77.)

Although the jury was provided the verdict form to take back into the deliberations room, nothing suggests that the jury was provided with a copy of the amended information. Likewise, nothing suggests that the jury was ever provided with a document identifying Petitioner's prior offense history. Because there is simply no evidence suggesting that the jury received such, there was no reason for counsel to object. Counsel, therefore, could not have been deficient for failing to object and there can be no showing of prejudice. Petitioner has failed to demonstrate that the state court's

decision was contrary to or an unreasonable application of *Strickland*. This claim is due to be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Amended Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person in State Custody, ECF No. 4, should be **DENIED**, and that a certificate of appealability should be **DENIED**.

**DONE AND ORDERED** this 23rd  day of December, 2016.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.